THE STATE, THE CENTRAL RAILROAD COMPANY OF NEW JERSEY, PROSECUTORS, PLAINTIFFS IN ERROR, v. THE CITY OF ELIZABETH, DEFENDANT IN ERROR.

1. The making of deeds by land owners, recognizing the existence of a street, is conclusive evidence against them of the dedication of the street to the public use, either by the grantors themselves, or by those under whom they claim.

2. It was within the powers of the commissioners to lay out streets and avenues in the city of Elizabeth, under the act of March 13th, 1867, to close and vacate public streets, but the mere fact of the omission of a street on the map made by said commissioners, is not evidence that they adjudged and determined that such street should be closed, or even of the intention of the commissioners to close the street.

3. If such street was, in fact, closed by the commissioners, the presumption is, that it would have been laid down upon the map, and marked as other streets designated to be closed.

4. Such street not having been closed by the commissioners, the common council of Elizabeth may, under the charter, accept the same in the mode prescribed by law.

On error to the Supreme Court.

For opinion of the Supreme Court, see 6 *Vroom* 359.

For the plaintiffs in error, *W. J. Magie* and *B. Williamson.*

For the defendants in error, *Cortlandt Parker.*

The opinion of the court was delivered by

GREEN, J.   The writ of error in this case, brings up for review the judgment of the Supreme Court affirming the proceedings of the city council of Elizabeth, in accepting as a public street, and paving that portion of Wall street or Magnolia avenue extending from Trumbull street to Division street.

It appears, from the evidence in the case, that the street in question had, years before, been dedicated to public use by the owners of the property, that it was laid down on a map on record in the clerk's office of the county of Essex, known as the "map of Wetmore's addition to Elizabethport," and that it had been a traveled street at least as far back as between 1859 and 1863.   The evidence produced by the prosecutors in this cause, precludes them from denying the existence of the street, or the right of the public to travel upon it.   Several deeds offered by them, and under which they claim title, recognize the existence of Wall street, and the lands thereby conveyed are expressly bounded by it. Two of these deeds, both made and recorded in 1865, refer to the "map of Wetmore's addition to Elizabethport," and expressly state that the boundaries of the property conveyed, embrace portions of Wall, Bond, and Division streets, as laid down on said map, " which portions are conveyed subject to being and remaining public highways until vacated by lawful authority."

The making of such deeds by the land owners, is conclusive evidence against them of the dedication of the street to public use, either by the grantors themselves, or by those under whom they claim.   And the acceptance of the deeds by the

prosecutors is equally conclusive of their assent to, and acknowledgment of the public use to which the land is subject. A sale of land with reference to a map on file in a public office, or describing lots as bounded by existing streets, is evidence of a dedication of the latter, binding upon both vendor and vendee. 2 *Dillon on Mun. Corp.*, § 503. As against the prosecutors, the dedication of the street to the public use was complete and absolute, it had passed beyond their control, and its acceptance by the proper public authority made in the mode prescribed by law, was only needed to charge the public with the duty of maintaining and repairing the street as a public highway.

The charter of the city of Elizabeth, (*Pamph. Laws*, 1863, § 115, *p.* 153,) provides " that it shall be lawful for the city council, whenever they shall deem it expedient, to cause surveys to be made and filed in the office of the clerk of the county of Union, and recorded in the book of records of roads and highways for said county, of such streets and highways which have been, or at any time hereafter may be opened by the owners of any land over which the same runs, and which has been by such owners dedicated to the public, by permitting the public to use the same, and by selling lots fronting thereon. And all such streets and highways, when surveyed, and such surveys filed and recorded as aforesaid, shall be deemed and taken to be public streets or highways, and shall be maintained and treated as such in all respects."

The street in question, prior to the action of the common council complained of, was a street of the precise character described in the section of the charter above quoted. And, in September, 1869, a resolution was passed by council, directing the city surveyor to cause a survey of the street to be made, to the end that it might be accepted as one of the public streets of the city of Elizabeth. The survey having been made, and approved by the committee on streets and highways, the council, on the 1st of December following, adopted a resolution, " that the said survey be filed in the office of the clerk of the county of Union, and recorded in the book of records of roads and highways for said county,

and that the said Wall street, from Trumbull street to Division street, be and hereby is declared to be and accepted as a public street of the city of Elizabeth." It is difficult to conceive of a case of municipal legislation where the subject matter was more completely within the jurisdiction of the municipal authority, or where the proceedings were more exactly in accordance with the law prescribing the mode in which the power should be exercised.

It is contended, however, that previous to the passage of the resolutions above mentioned, the powers conferred by the 115th section of the charter were abrogated or taken away by an act of the legislature, entitled "an act appointing commissioners to lay out streets and avenues in the city of Elizabeth," approved March 13th, 1867. (*Pamph. Laws* 210.) It may be questioned whether the act of 1867 in any way affected the power of the common council under the 115th section of the charter; but it is a sufficient answer to the insistment of the prosecutors to say that the power was at most only suspended for the term of two years from the approval of the act, and that if suspended, it was revived at the expiration of the period limited for the existence of the commission, or restored by the absolute repeal of the act in 1869.

It is further contended that the street in question was closed or vacated by the commissioners appointed by the act of 1867; that their action was final and conclusive, and that the street could not afterwards be accepted or opened by the city council except in the mode prescribed by the repealing act of 1869.

The act of 1867 conferred upon certain commissioners, therein named, for the term of two years, the exclusive power to lay out streets in the city of Elizabeth, and to close any streets or highways, or any parts thereof, which had theretofore been laid out and had not been duly surveyed and recorded as public streets, according to law. The act also provided that the commissioners should cause maps, plans and surveys to be made and filed in the office of the city clerk, with such notes or explanations as might be necessary

to render the same intelligible, and that such maps, plans and surveys should be final and conclusive in respect both to the city and the land owners.

The closing or vacating of Wall street was clearly within the powers conferred upon the commissioners. The only question is : Did they exercise the power ? did they, in fact, vacate or close the street? To establish the position of the prosecutors, two things are essential : an actual adjudication by the commissioners upon the subject; and sufficient legal evidence by which it may appear that they adjudged and determined that the street should be closed. If the commissioners, either by design or accident, did not act in the premises—if they inadvertently omitted either, through ignorance of the existence of the streets, or through misapprehension of its extent or character to adjudicate upon the question— it cannot be pretended that the street was vacated or closed by them.

The maps filed by the commissioners are the only legal evidence of their action in the premises; no other record was made or kept of their proceedings. Upon the commissioners map, a copy of which is before the court, Wall street, between Trumbull street and Division street, is entirely omitted. This omission, it is contended, is plenary evidence of the closing of the street by the commissioners. The streets upon the map are laid down in different colors, and bounded by differently shaded lines. The explanations upon the map state that the different lines and colors respectively represent streets laid out by the commissioners ; streets already laid out and streets to be closed. If the commissioners, in fact, closed this part of Wall street, the presumption is that it would have been laid down upon the map in the color, and marked with the lines used to designate a street to be closed. The omission to do so is no evidence of the action, or even of the intention, of the commissioners to close the street. The mapping by the commissioners was a mere preliminary proceeding, and only determined what streets were thereafter to be opened, altered, or closed. The actual opening or closing was a subsequent independent proceeding, for which damages were to be assessed

and paid to the land owners, pursuant to the city charter. By the act of 1867, as well as by the repealing act of 1869, such subsequent proceedings were expressly confined to streets laid down upon the commissioners' map. And if (as is contended) the omission of a street from the map should be deemed conclusive evidence that it was closed by the commissioners, the land owner, by such omission, would be barred of all claim for damages for closing a street in front of his property. The proceedings of council sought to be reviewed, were neither to open nor vacate a street, but merely to accept a street already opened, and which the commissioners had either refused or omitted to close. In those proceedings we find no error, and the judgment of the Supreme Court must be affirmed, with costs.

*For affirmance* — The CHANCELLOR, CHIEF JUSTICE, DEPUE, VAN SYCKEL, WOODHULL, CLEMENT, DODD, GREEN, LATHROP, LILLY, WALES. 11.

*For reversal* — None.